UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN R. FISHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:07-cv-1537-DFH-WTL |
| | ) |
| SUTTON PLACE/PINNACLE A.M.S., | ) |
| | ) |
| Defendant. | ) |

ENTRY GRANTING MOTION TO COMPEL ARBITRATION

For the reasons explained in this Entry, the defendant's motion to compel arbitration and stay the current proceedings must be GRANTED.

Defendant Pinnacle Sutton Place LLC, a division of American Management Services, LLC ("Pinnacle"), employed plaintiff Brian Fisher as a supervisor of apartment complexes beginning in late May 2005.  Fisher has sued Pinnacle for discriminating against him based on his race by demoting him and in the conditions of his employment (harassment), and also for retaliating against him by firing him after he filed a charge of discrimination with the Equal Employment Opportunity Commission.  Fisher brings these claims under Title VII of the Civil Rights Act of 1964, as amended, and under 42 U.S.C. § 1981, which prohibits race discrimination in contracts.  The terms of Fisher's original employment application to Pinnacle included a provision in which the parties agreed to resolve employment disputes through binding arbitration instead of the court system.

The agreement to arbitrate applies to "any and all previously unasserted claims, disputes, or controversies arising out of or relating to [Fisher's] . . . employment" and provides that such matters will be resolved "exclusively by final and binding arbitration before a neutral Arbitrator."

Following Pinnacle's termination of his employment, Fisher filed a claim of discrimination and retaliation with the Equal Employment Opportunity Commission.  He then filed the present lawsuit.  Pinnacle has responded to the complaint with its motion to compel arbitration.  Fisher has not opposed the motion.

The Federal Arbitration Act ("FAA") provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" may petition any federal district court, which would otherwise have jurisdiction over the underlying matter, "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4. The FAA applies to written agreements to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.

When Congress enacted the FAA in 1925, the scope of "commerce" considered subject to federal regulation under the Commerce Clause of Article I of the Constitution was much narrower than it is today.  Organized labor opposed earlier drafts of the FAA because they were concerned that it might be used to

authorize federal judicial enforcement of arbitration clauses in employment contracts and collective bargaining agreements.  See *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 126-27 (2001) (Stevens, J., dissenting) (reviewing legislative history of the FAA).  At the suggestion of then-Secretary of Commerce Herbert Hoover, the draft legislation was amended to provide that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in interstate or foreign commerce."  *Id.* at 127; 9 U.S.C. § 1.  Despite the clear indications that this amendment was intended to make it crystal clear that the FAA would not apply to *any* employment agreements – the exclusion covered all employment agreements that were thought to be within the scope of the congressional power to legislate – and despite Congress' use of statutory language that made that intention clear to readers in 1925, the Supreme Court in 2001 voted five to four to reach the opposite result, construing the FAA to reach virtually all employment agreements in the American economy except "contracts of employment of seamen, railroad employees, or any other class of workers engaged in interstate or foreign commerce."  *Circuit City Stores*, 532 U.S. at 119.  In other words, the Supreme Court has held that the FAA does not apply to employment contracts of workers at the core of the congressional commerce power – sailors, railroad workers, and the like – but applies to employment contracts of virtually all other workers.  That is now the law of the land, and the FAA therefore applies to Fisher's contract with Pinnacle.

Pinnacle has shown that Fisher signed the Issues Resolution Agreement as a condition of applying for employment with Pinnacle. The fact that the agreement imposes an obligation to arbitrate disputes is clear and prominent. This was not an arbitration agreement buried in small, light-gray type on the back of an invoice or purchase order. No literate person completing and signing the form could have missed the agreement to arbitrate, which is the subject of five of eight pages in the document. The form also makes it perfectly clear that any applicant who does not sign the agreement with its arbitration term will not be considered any further. See Def. Ex. B. Fisher has not raised any issues with respect to the enforceability of the arbitration agreement, and in light of *Circuit City Stores*, the court sees none. In particular, the agreement and accompanying rules provide that the employee will be responsible for no more than $100 in arbitration costs, less than one-third of the filing fee for a civil action in federal court.

The Issues Resolution Agreement plainly applies to the claims Fisher asserts in this case. "Whether a particular issue is subject to arbitration is a matter of contract interpretation, because 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999), quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

Fisher and Pinnacle agreed to "settle any and all previously unasserted claims, disputes or controversies arising out of or relating to [Fisher's] . . .

-4-

employment . . . exclusively by final and binding arbitration before a neutral Arbitrator." Fisher's claims in this case are that Pinnacle discriminated against him on the basis of his race and that it also retaliated against him for having filed a charge of discrimination with the EEOC in March 2007. These claims arise out of and relate to Fisher's employment by Pinnacle. These claims are therefore within the scope of the Issues Resolution Agreement. The Issues Resolution Agreement, in turn, recites that its terms may be asserted as a basis for appropriate relief under the FAA. That is precisely what has occurred here, where Pinnacle has sought to compel proceedings consistent with that provision. Fisher has not shown that he is not bound by the agreement or that its requirements should not be enforced.

Pinnacle's motion to compel arbitration (Docket No. 11) is therefore GRANTED. The parties are ORDERED to pursue arbitration in accordance with the Issues Resolution Agreement. When an issue in the proceedings is subject to arbitration under the FAA, the statute provides that a trial court "shall on application of one of the parties stay the trial of the action until such arbitration has been held[.]" 9 U.S.C. § 3. The action is therefore STAYED. Pending resolution of the arbitration proceedings, this case is administratively closed.

So ordered.

Date: May 15, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court

-6-

Southern District of Indiana

Copies to:

Robert Wayne Markette, Jr.
GILLILAND MARKETTE & MILLIGAN LLP
rwm@gilliland.com

BRIAN R. FISHER
10418 Starview Ct.
Indianapolis, IN 46229